UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

HERMAN MILLER, INC.,
a Michigan corporation,

    Plaintiff,

v.

GOLD LEAF HOLDING LTD.,
d/b/a ROVE CONCEPTS,
a Canadian corporation,

    Defendant.

CASE NO.

HON.

## COMPLAINT

Plaintiff Herman Miller, Inc. states for its complaint against Defendant Gold Leaf Holding Ltd., d/b/a Rove Concepts ("Rove Concepts"), as follows:

## PARTIES

1.    Plaintiff Herman Miller, Inc. ("Herman Miller") is a corporation organized and existing under the laws of the State of Michigan having a principal place of business at 855 East Main Avenue, Zeeland, Michigan 49464.

2.    Defendant Gold Leaf Holding Ltd., d/b/a Rove Concepts, is a corporation organized and existing under the laws of British Columbia, Canada, having a principal place of business at 990 West 7th Avenue, Vancouver, British Columbia, Canada.

## JURISDICTION AND VENUE

3.    This is an action for trademark infringement under 15 U.S.C. § 1114(1); for use of false designations of origin under 15 U.S.C. § 1125(a); for dilution under 15 U.S.C. § 1125(c); for violation of the Michigan Consumer Protection Act, MCL § 445.903; and for infringement and unfair competition under Michigan common law.

4.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Michigan pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy. In addition, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a States and citizens of a foreign state.

5.     This Court has personal jurisdiction over Rove Concepts because Rove Concepts conducts substantial business in this forum and because this action arises, in whole or in part, from Rove Concepts' transaction of business within the State of Michigan and its commission of tortious acts within the State of Michigan.  Plaintiff has been harmed and continues to suffer harm in the State of Michigan from Defendant's acts.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and/or 28 U.S.C. § 1400(a).  On  information and belief, Rove Concepts has transacted business in this district, and a substantial part of the events giving rise to the claims occurred in this district.

**HERMAN MILLER'S TRADEMARKS AND TRADE DRESS**

*Herman Miller and Charles and Ray Eames*

7.     For nearly ninety (90) years, Herman Miller has been a leader in the highly competitive business of designing, manufacturing, distributing, and selling high-quality, design-oriented furniture.

8.     Herman Miller® is renowned for its contemporary furniture designs and its furniture designs have been deemed works of art.

2

9. Herman Miller is a registered trademark in a number of international trademark classes, including, but not limited to, for furniture. **Exhibit 1**.

10. For decades, Herman Miller has developed close working relationships with preeminent contemporary furniture designers, one of the most notable of whom was Charles Eames.

11. The creative genius of Charles Eames manifested itself in many ways, including photography, film making, architecture, and, most significantly, furniture design.

12. Charles Eames and his wife, Ray Eames, became world-famous furniture designers and designed many of the items that comprise Herman Miller's furniture line. Charles and Ray Eames became celebrities. Authors have written dozens of books about them. The United States Library of Congress organized a travelling exhibit of the Eames' works in 1999.

13. Herman Miller has used the "Eames" name, as well as the name "Charles Eames" and the name "Ray Eames," and has created an intentional association with these names as used in connection with its furniture, since at least 1951. Examples include the EAMES® Chaise, the EAMES® Desk and Storage Unit (since the 1950s), the EAMES® Elliptical Table, EAMES® Executive Chairs, and the EAMES® Molded Plywood Chairs, among others, including those described below. These and other furniture designs have received numerous design awards.

14. On January 26, 1982, the United States Patent and Trademark Office formally memorialized the association between the EAMES name and Herman Miller when it issued to Herman Miller US Trademark Registration No. 1187673, for the EAMES® trademark. The registration provides Herman Miller with the exclusive right to use the EAMES® designation in connection with furniture. **Exhibit 2.**

15. Herman Miller is also the owner of the rights of publicity to the name and likeness of Charles Eames for use in connection with furniture. **Exhibit 3.**

3

16.     Herman Miller has an industry-wide reputation for manufacturing and marketing the highest-quality contemporary furniture products, including being the exclusive source for EAMES® chairs and furniture.

17.     In 1956, Charles and Ray Eames designed the legendary EAMES® Lounge Chair and Ottoman, which is depicted below:



*See* **Exhibit 4.**

18.     Since then, the New York Museum of Modern Art has made the EAMES® Lounge Chair and Ottoman part of its permanent collection.  In addition, the famous EAMES® Lounge Chair and Ottoman has appeared on numerous television programs, such as NBC's "Today" show and Paramount Picture's "Frasier."  In June 2002, Fast Company named the EAMES® Lounge Chair and Ottoman as one of the fifteen (15) best-designed consumer products of the 20th century, along with Ford's Model T and the Swiss Army Knife.

19.     Since 1956, Herman Miller has extensively advertised he EAMES® Lounge Chair and Ottoman and has sold more than 100,000 of them, always associating Herman Miller as the source of the chair and ottoman.

20.     The distinctive design of the EAMES® Lounge Chair and Ottoman serves to identify Herman Miller as its source and is Herman Miller's trade dress and trademark.

4

21.     The famous EAMES® Lounge Chair and Ottoman is the subject of protection of United States Trademark Registration No. 2,716,843, legally issued to Herman Miller by the United States Patent and Trademark Office.  The registration provides Herman Miller with the exclusive right to use the design of the EAMES® Lounge Chair in connection with furniture. See **Exhibit 5**.

22.     The trade dress of the EAMES® Lounge Chair is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace. The unique and distinctive look of the trade dress of the EAMES® Lounge Chair identifies and distinguishes it from competitors' chairs. The EAMES® Lounge Chair trade dress registration is incontestable.

*The EAMES® Aluminum Group and EAMES ® Soft Pad Trade Dress*

23.     Charles and Ray Eames designed the EAMES® Aluminum Group chairs, and Herman Miller began producing them in 1958.  Herman Miller has continuously produced the chairs since then.  An example of the EAMES® Aluminum Group chairs is depicted below:



24. In 1969, Charles and Ray Eames added cushions to the EAMES® Aluminum Group chairs, and Herman Miller has produced them ever since. These chairs are sold as the EAMES® Soft Pad chairs. An example of the EAMES® Soft Pad chairs is depicted below:



25. Depictions of the EAMES® Aluminum Group™ and EAMES® Soft Pad trade dresses are also attached hereto as **Exhibit 6**.

26. Since introducing the EAMES® Aluminum Group chairs in 1958, Herman Miller has invested millions of dollars in promoting the full family of EAMES® Aluminum Group and EAMES® Soft Pad chairs.

27. The trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace. The unique and distinctive look of the trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs identifies and distinguishes the EAMES® Aluminum Group and EAMES® Soft Pad chairs from competitors' chairs.

28. The consuming public and the commercial trade have come to recognize and associate the trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs with Herman Miller as a result of the extensive and continuous promotion and sales of the EAMES®

Aluminum Group and EAMES® Soft Pad chairs over the past fifty years.  As a result of these efforts, the trade dress of the EAMES® Aluminum Group and EAMES® Soft Pad chairs has acquired appreciable secondary meaning, and is indeed a famous design mark, which identifies and distinguishes the EAMES® Aluminum Group and EAMES® Soft Pad chairs from chairs offered by competitors.

29.    The United States Patent and Trademark Office recognized Herman Miller's exclusive, proprietary rights to at least some of the elements of the full family of EAMES® Aluminum Group and EAMES® Soft Pad chairs on June 20, 2006 when it issued to Herman Miller US TM Registration No.  3105591, covering the shape of the frame common to the EAMES® Aluminum Group and EAMES® Soft Pad chairs, as depicted below:



30.    US TM Registration No. 3105591 is now incontestable.  The registration provides Herman Miller with the exclusive right to use the design of the EAMES® Aluminum Group chairs in connection with furniture.   A copy of the registration certificate is attached as **Exhibit 7**.

31.    As a result of such extensive and exclusive use and promotion of the trade dress embodied in the EAMES® Aluminum Group chairs, the trade dress has developed appreciable secondary meaning and fame as an indicator that Herman Miller is the source of goods.

7

32. Herman Miller's trade dress for the EAMES® Aluminum Group chairs represents highly valuable goodwill owned by Herman Miller.

### ROVE CONCEPTS' UNLAWFUL CONDUCT

33. Rove Concepts sells chairs and other furniture online throughout the United States and the world, including in the State of Michigan.

34. Among the products Rove Concepts sells, offers for sale, or has offered for sale or sold in the past are the following:

    (a)    "Eames Lounge Chair"

    (b)    "Eames Molded Plastic Side Chair Wooden Dowel Base"

    (c)    "Eames Molded Plastic Armchair Wooden Dowel Base"

    (d)    "Eames Molded Plywood Dining Chair"

    (e)    "Eames Office Chair EA117"

    (f)    "Eames Office Chair EA217"

**Exhibit 8.**

35. Rove Concepts' use of Herman Miller's trademarks and trade dress in connection with the sale, offering for sale, distribution, and advertising of goods and/or services has been intentional and with knowledge of the considerable reputation, goodwill, and fame associated with and represented by Herman Miller's registered trademarks and trade dress.

36. Indeed, Rove Concepts' own promotional materials acknowledge that "these furniture designs … have achieved an iconic status, easily recognizable by … furniture admirers all around the world." *See* https://www.youtube.com/watch?v=s_Aj8XFZSCw#at=12> ("Rove Concepts intro").

37. In short, Rove Concepts does not dispute that they are making "design reproductions" of trademarked Eames designs. Indeed, Rove Concepts' express business model

8

is to duplicate Herman Miller's designs as closely as possible. *See* Rove Concepts website, https://www.roveconcepts.com/why-rove-concepts_232.html (visited August 3, 2016), **Exhibit 9**.

38. Rove Concepts' said use is likely to cause confusion, mistake, or deception (initial interest, point-of-sale, and/or post-sale) as to the source of origin, sponsorship, or approval of the products offered for sale by Rove Concepts, in that purchasers or others are likely to believe Rove Concepts' products are Herman Miller's products or the products of a company legitimately connected with, approved by, or related to Herman Miller.

39. Rove Concepts' said use enables Rove Concepts, and invites and enables suppliers and manufacturers to represent and deceptively advertise, merchandise, market, display, and promote that the products offered for sale by Rove Concepts emanate from Herman Miller or from a concern legitimately connected with or approved by Herman Miller and to substitute and pass off the products offered for sale by Rove Concepts as Herman Miller's products.

40. Rove Concepts is also unlawfully using the HERMAN MILLER and EAMES trademarks owned by Plaintiff in Rove Concepts' metadata and in promotion of Rove Concepts' products for sale on its website.

41. On numerous occasions, Herman Miller has demanded that Rove Concepts cease and desist its unlawful activities with regards to Herman Miller's intellectual property. *See* **Exhibits 10-12.**

42. Rove Concepts has engaged in a number of delay tactics to avoid responding to Herman Miller's demands, including switching law firms on at least three different occasions.

43. However, Rove Concepts has said on numerous occasions that it would remove Herman Miller trademarked content from its website and social media materials. *See* **Exhibits 13-14**.

44. Although Rove Concepts has removed some Herman Miller trademarked content from its website, it subsequently proceeded to place additional Herman Miller trademarked content on its website and social media materials. When questioned about this, Rove Concepts said that it had "launched a new website version only very recently" and that the new website "incorrectly carried over content that was removed previously on the old website." **Exhibit 15**. Rove Concepts continued to commit to removing Herman Miller trademarked content in both the United States and Canada. **Exhibit 16**.

45. Despite its repeated representations that it would remove all Herman Miller trademarked content from its website and social media materials, Rove Concepts continues to unlawfully use Herman Miller trademarks and trade dress in connection with the sale, offering for sale, distribution, and advertising of goods and/or services.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

46. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

47. Rove Concepts' use in commerce of Plaintiff's trademarks and trade dress is likely to cause confusion, to cause mistake, or to deceive.

48. The foregoing conduct of Rove Concepts constitutes trademark infringement in violation of 15 U.S.C. § 1114(1).

49. Rove Concepts' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

50. Plaintiff has no adequate remedy at law.

## COUNT II
## FALSE DESIGNATIONS OF ORIGIN UNDER 15 U.S.C. § 1125(A)

51. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

52. Rove Concepts' use in commerce of Plaintiff's trademarks and trade dress is likely to cause confusion, to cause mistake, or to deceive the relevant public that products offered for sale by Rove Concepts are authorized by or are affiliated with Plaintiff.

53. The above-described acts of Rove Concepts constitute use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion; to cause mistake; or to mislead as to the affiliation, connection, or association of Rove Concepts or its goods or services with Plaintiff and the products sold under the trademarks or trade dress of Plaintiff in violation of 15 U.S.C. § 1125(a).

54. Rove Concepts' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

55. Plaintiff has no adequate remedy at law.

## COUNT III
## DILUTION UNDER 15 U.S.C. § 1125(C)

56. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

57. Rove Concepts' use in commerce of Plaintiff's trademarks and trade dress is likely to create associations that will impair the distinctiveness of Plaintiff's trademarks and trade dress.

58. The aforesaid acts of Rove Concepts are likely to blur the distinctive quality of Plaintiff's trademarks and trade dress in violation of 15 U.S.C. § 1125(c).

59. Rove Concepts' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

60. Plaintiff has no adequate remedy at law.

## COUNT IV
## VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT

61. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

62. The State of Michigan has an important interest in ensuring that persons and entities doing business with Michigan residents fully comply with Michigan laws.

63. Rove Concepts has knowingly made false and misleading representations as to the source of its goods or services and has knowingly made false representations as to its affiliation with Plaintiff.

64. The aforesaid acts of Rove Concepts constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of the Michigan Consumer Protection Act. MCL § 445.903(1)(a)-(c),(e).

65. Rove Concepts' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

66. Plaintiff has no adequate remedy at law.

## COUNT V
## COMMON LAW UNFAIR COMPETITION–TRADEMARK INFRINGEMENT

67. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

68. Rove Concepts has used in commerce Plaintiff's trademarks and trade dress without the authorization or consent of Plaintiff, in connection with the sale and offer for sale of goods and services similar to those sold by Plaintiff.

69. Rove Concepts' use of Plaintiff's trademarks and trade dress is calculated to, likely to, and does in fact confuse and deceive consumers about the origin of Rove Concepts' goods and services.

70. The foregoing conduct of Rove Concepts constitutes the infringement of Plaintiff's common law rights in its trademark and trade dress and unfair competition in violation of the common law of the State of Michigan.

71. Rove Concepts' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

72. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

73. Preliminarily and permanently enjoining Rove Concepts, its agents, representatives, employees, assigns, and suppliers, and all persons acting in concert or privity with it, from using Plaintiff's trademarks or trade dress, or any other names or marks or trade dress that is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff's trademarks or trade dress, or from otherwise infringing or diluting Plaintiff's trademarks or trade dress including selling or offering for sale any products that use, infringe, or dilute Plaintiff's trademarks or trade dress, or from competing unfairly with Plaintiff;

74. Awarding Plaintiff all damages to and costs incurred by it because of Rove Concepts' infringing activities and other conduct complained of herein, together with all profits of Rove Concepts for such activities;

75. Awarding Plaintiff treble damages as provided under 15 U.S.C. § 1117;

76. Declaring that this is an exceptional case and awarding Plaintiff its reasonable attorneys' fees and costs as provided by law;

77. Awarding Plaintiff pre-judgment and post-judgment interest on the damages caused by Rove Concepts' infringing activities and other conduct complained of herein; and

78. Granting Plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff

Date: August 10, 2016   By: s/*Bryan R. Walters*
Bryan R. Walters (P58050)
Business Address and Telephone:
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
brwalters@varnumlaw.com

10402181_2.docx